IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**LEIDA PAGAN-TORRES,**
**Plaintiff**

v.                                                         **CIVIL NO. 02-1050(DRD)**

**PUERTO RICO LAND AUTHORITY,**
et als.,
**Defendants**

## OPINION AND ORDER

Pending before the Court is defendant, ACE Insurance Company (ACE)'s *Motion for Summary Judgment* (Docket No. 62). ACE moves the Court to dismiss plaintiff's complaint against them because allegedly the policies issued on behalf of defendant do not afford coverage for plaintiff's claims. For the reasons stated herein, the Court hereby **GRANTS** ACE's *Motion for Summary Judgment* (Docket No. 62).

## MAGISTRATE REPORT AND RECOMMENDATION

The District Court may refer dispositive motions to a United States Magistrate Judge for a Report and Recommendation. 28 U.S.C. § 636(b)(1)(B) (1993); FED.R.CIV. P. 72(b); Rule 503, Local Rules, District of Puerto Rico. See Mathews v. Weber, 423 U.S. 261 (1976). Of course, an adversely affected party may contest the Magistrate's report and recommendation by filing its objections within ten (10) days after being served a copy thereof. See Local Rule 510.2(A); FED.R.CIV. P. 72(b). Moreover, 28 U.S.C. § 636(b)(1), in pertinent part, provides that:

> Within ten days of being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is

made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate. See 28 U.S.C. § 636(b)(1).

However, pursuant to FED.R.CIV. P. 72(b), "[a]bsent objection by the plaintiffs, the district court had a right to assume that plaintiffs agreed to the magistrate's recommendation." Templeman v. Chris Craft Corp., 770 F.2d 245, 247 (1st Cir. 1985), cert. denied, 474 U.S. 1021 (1985). Moreover, "[f]ailure to raise objections to the Report and Recommendation waives that party's right to review in the district court and those claims not preserved by such objection are precluded on appeal." Davet v. Maccarone, 973 F.2d 22, 30-31 (1st Cir. 1992). See also Henley Drilling Co. v. McGee, 36 F.3d 143, 150-151 (1st Cir. 1994) (holding that objections are required when challenging findings actually set out in magistrate's recommendation, as well as magistrate's failure to make additional findings); Lewry v. Town of Standish, 984 F.2d 25, 27 (1st Cir. 1993) (stating that "[o]bjection to a magistrate's report preserves only those objections that are specified"); Keating v. Secretary of H.H.S., 848 F.2d 271, 275 (1st Cir. 1988); Borden v. Secretary of H.H.S., 836 F.2d 4, 6 (1st Cir. 1987) (holding that appellant was entitled to a *de novo* review, "however he was not entitled to a *de novo* review of an argument never raised"). See generally United States v. Valencia, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

Provided plaintiffs have objected the determinations addressed by the Magistrate, the Court shall make a de novo determination of the R & R.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Pursuant to the language of the rule, the moving party bears the two-fold burden of showing that there is "no genuine issue as to any material facts," and that he is "entitled to judgment as a matter of law." Vega-Rodriguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997). After the moving party has satisfied this burden, the onus shifts to the resisting party to show that there still exists "a trial worthy issue as to some material fact." Cortes-Irizarry v. Corporacion Insular, 111 F.3d 184, 187 (1st Cir. 1997). A fact will deemed "material" if it potentially could affect the outcome of the suit. Id. Moreover, there will only be a "genuine" or "trial worthy" issue as to such a "material fact," "if a reasonable fact-finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." Id.

At all times during the consideration of a motion for summary judgment, the Court must examine the entire record "in the light most flattering to the non-movant and indulge all reasonable inferences in the party's favor." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood . . . ." Greenburg v. Puerto Rico Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987). In fact, "[o]nly if the record, viewed in [this] manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997).

Unsettled issues of motive and intent as to the conduct of any party – as may arise in actions under §§ 1983 and 1985 – will normally preclude the Court from granting summary judgment. Mulero-Rodriguez v. Ponte, Inc., 98 F.3d 670, 677 (1st Cir. 1996) (reversing summary judgment and

emphasizing that "determinations of motive and intent . . . are questions better suited for the jury") (internal quotation marks omitted) (citation omitted); see also Tew v. Chase Manhattan Bank, N.A., 728 F.Supp. 1551, 1555 (S.D.Fla. 1990) ("Certain issues such as fraud, intent, and knowledge lend themselves to trial, rather than summary judgment. These matters can often only be proved by reliance upon circumstantial evidence except in the rare case where there is uncontroverted proof of a 'smoking gun.'").  However, "even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences [or] unsupported speculation." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 95 (1st Cir. 1996).

## FACTUAL AND PROCEDURAL BACKGROUND

On April 11, 2001, plaintiff Leida Pagan Torres, filed a "Charge of Discrimination" before the Equal Employment Commission (EEOC) charging its employer, the Land Authority of Puerto Rico (LAPR) alleging political discrimination and other wrongful conduct. On or around June 15, 2001, the EEOC notified LAPR with a copy of plaintiff's charge of discrimination. ACE issued policy No. DO-342 in two different policy years, to wit, the first policy was from June 16, 2000 to June 16, 2001, and the second policy was from June 16, 2001 to June 16, 2002. Policy No. DO-342 wwas a "Directors, Trustees and Officers Indemnity Insurance" and is a claims made policy and coverage is limited for liability for claims that are first made against the insured during the policy period. The LAPR notified ACE of the instant complaint on June 17, 2002.

ACE filed the instant motion for summary judgment sustaining that there is no coverage under said "claims made" policy in effect at the time plaintiff filed the administrative charges against the LAPR because the insured failed to notify its insurer of the underlying claim of political discrimination claim within the effective time allotted by the insurance policy. Hence, ACE affirms

that plaintiffs' claims acts are not covered by the policy therefore, the instant claims shall be summarily dismissed as to the insurance company. Further, ACE avers that dismissal is warranted because according to the policy's language, the LAPR had to provide due notice of any claim within the effective policy period and not more than thirty (30) days after expiration of the policy. Finally, ACE affirmatively sustains that the only notice it received was a letter from the LAPR on June 17, 2002, advising of the filing of the instant complaint on January 14, 2002.

The Court notes that plaintiffs did not oppose ACE's motion for summary judgment. However, co-defendants counter by stating that policy coverage for plaintiffs' claims is warranted pursuant to the policy terms into effect from June 16, 2000 through June 16, 2001. Additionally, co-defendants sustain that there was a second policy providing coverage for the period of June 16, 2001 through June 16, 2002. Because the amended complaint was served on the co-defendants on May 3 and on May 6, 2002, and ACE was notified of said amended complaint on June 17, 2002, according to the co-defendants the claim was notified within the time provided to do so. The Court also notes that co-defendants sustain that because the administrative complaint filed by plaintiff before the Equal Employment Opportunity Commission (EEOC) on April 11, 2001, and noticed to the LAPR on June 15, 2001, could not provide the remedies sought by plaintiff for the political discrimination claims, ACE cannot aver that said co-defendants failed to provide notice of said claim within the time allowed hence voiding coverage.

On June 9, 2005, the undersigned refered ACE's motion for summary judgment to U.S. Magistrate Judge Camille Velez-Rive for a Report and Recommendation (Docket No. 92). On July 1, 2005, the Magistrate Judge issued her R & R concluding that the instant motion for summary judgment should be granted and the claims against ACE should be dismissed. In a thorough R & R, the Magistrate Judge reasoned that under the policy for the period of June 16, 2000 through June

16, 2001, coverage was not warranted because the complaint was not notified by the insured to its insurer, to wit, ACE until June 17, 2002, that is more than one year had elapsed since said "claims made" policy had expired.  Further, the Magistrate Judge noticed that the Second Request for Admissions admits that the LAPR never notified ACE that a charge of discrimination had been filed by plaintiff before the EEOC on June 15, 2001.  Furthermore, the Magistrate Judge concluded that coverage was not warranted under the policy into effect from June 16, 2001 through June 16, 2002 because notice of the lawsuit on June 17, 2002 was not the first notice received by defendants as to plaintiff's political discrimination claims and it was a progression and/or reiteration of the prior EEOC complaint not timely notified to ACE.  In other words, that the first claim made to defendant was the filing of the EEOC complaint on April 2001, and notified to the defendants on June 15, 2001.  Finally, the R & R concluded that because a "claims made" policy only provides coverage for claims brought to the insurer's attention during the effective dates of the policy, none of the policies issued by ACE on behalf of co-defendants would provided coverage for the instant claims.  (*See* R & R at Docket No. 93).

      The individual co-defendants and plaintiff have filed timely objections to the Magistrate Judge's Report and Recommendation (Docket Nos. 95 and 96 respectively).  The individual co-defendants object the R & R conclusions on two aspects, to wit, that the co-defendants had the affirmative duty to notify its insurer the claims for political discrimination contained in an administrative charge filed by plaintiff before the EEOC; and that the R & R failed to consider that ACE did not timely notify the insured its intention to deny coverage under the policy due to the alleged deficiencies in the notice of plaintiff's claims.  Plaintiff objects the Magistrate Judge's R & R on the grounds that the insurer failed to show that defendants' fault in notifying the insurance company the potential political discrimination case alleged in the administrative charge resulted in

prejudice waiving the insurer' duty to defend the claim.

## LEGAL ANALYSIS

The threshold query raised by the individual co-defendants is whether the administrative charge filed before the EEOC expressing a political discrimination cause of action constitutes the first claim made to the defendants which in turn, should have been notified to the insurer in order to activate coverage under the "claims made" policies issued by ACE. Should, the question posed be answered in the affirmative, the remaining of the defendants objections to the R & R may become moot.

At the outset, the Court notes that it is well known that under Title VII, employees are required to file an administrative charge as a prerequisite to commence a civil complaint for employment discrimination. The purpose of said requirement is to put the employer on notice of the claim and to provide an opportunity for early conciliation. Lattimore v. Polaroid Corp., 99 F.3d 456, 464 (1st Cir. 1996)(citations omitted). Consequently, the civil complaint must be framed within the charges as alleged in the administrative complaint and the investigation that may reasonably result from said charge. Id., (*citing* Powers v. Grinnell Corp., 915 F.2d 34, 38 (1st Cir. 1990)(quotations omitted)). The main purpose behind this procedure is to provide conciliation and mediation and avoid that an employee may allege one claim in the administrative charge and then a completely different claim in the civil complaint.

The individual co-defendants acknowledge that plaintiff's administrative charge before the EEOC alleged "certain threats and the implementation of persecutory and harassing patterns that co-defendants either caused, favored, or tolerated due to plaintiff's political affiliation". (Co-defendants Objections to Magistrate Judge's R & R, Docket No. 95, p.2). However, the co-defendants sustain that because the EEOC could not provide the remedies sought by plaintiff, plainly because the EEOC

does not have jurisdiction to address said political claims inasmuch such claims are not covered under Title VII violations. Rather, it is uncontested that since plaintiff's claims fall under the protection of the First Amendment, and the EEOC could not provide plaintiff with any kind of remedy, notice to the insurer of plaintiff's charges filed within the EEOC was unnecessary because the notification of the administrative charges should not be considered, for purpose of coverage, as a first made claim. Individual co-defendants affirm that plaintiff's intentions at the time the EEOC charge was filed does not render that subsequently plaintiff would file a claim for violation of her rights under the First Amendment for the same allegations under the EEOC charge.

An occurrence policy, which provides coverage for occurrences within the policy period regardless of when the claim is made, is distinguished from a claims-made policy, which only covers the insured for claims that are actually made during the policy period. Mercado Boneta v. Administracion del Fondo de Compensacion al Paciente, 125 F.3d 9, 11 n.1 (1st Cir. 1997); J.I. Corp. V. Fed. Ins.Corp., 920 F.2d 118, 120 n.2 (1st Cir. 1990). In other words, an occurrence policy protects the policyholder from liability for any act done while the policy is in effect, whereas a claims made policy protects the holder only from claims made during the life of the policy. St. Paul Fire & Marine Ins. Co. v. Barry, 438 U.S. 531, 535 n.3, 98 S.Ct. 2923, 2927 n.3 (1977). Moreover, a claims made policy is defined as "an agreement to indemnify against all claims made during a specified period, regardless of when the incidents that gave rise to the claims occurred". Garner, Bryan A., Black's Law Dictionary, 8th ed., Thomson West, p. 821. Notwithstanding, a claim is defined as "the aggregate of operative facts giving rise to a right enforceable by a court" ... "the assertion of an existing right; any right to payment or to an equitable remedy, even if contingent or provisional"... "an interest or remedy recognized at law; the means by which a person can obtain a privilege, possession, or enjoyment of a right or thing". Black's Law Dictionary, 8th ed., at p. 264.

An examination of the policies issued by ACE reveals that the insurance agreement would provide coverage for "claims against the insured for a wrongful act, provided that the claim is first made against an insured during the policy period". Further, as a condition precedent to any insurance to be afforded by the policies, the insured agreed to "give written notice to the insurer of any claim first made during the policy period as soon as practicable, but in no event later than thirty days after the termination of the policy". Both claims made policies issued by ACE contain a list of definitions, and in its relevant parts, defines claim as "any notice received by the organization, or by an insured alleged to have committed a wrongful act, of the intention of person or entity to hold an insured responsible for the results of any specified wrongful act".

The plain language of the definition for a claim defeats the defendants' objections. The language provides that a claim is "**any notice received by the organization ... or an insured ... of the intention to hold an insured responsible ... for any specified wrongful act**". Hence whether the administrative charge filed before the EEOC was insufficient as to the instant complaint because the agency could not provide the remedies sought by plaintiff, does not override the fact that said charge did in fact **provide notice of plaintiff's intention to hold defendants responsible for their wrongful acts thereby triggering the insured obligation to notify the insurer of the potential liability**. Specifically, co-defendants wrongful acts allegedly occurred in violation of plaintiff's First Amendment rights.

Further, the co-defendants did in fact received notice of the administrative charge file before the EEOC and failed to provide notice to ACE. Pursuant to the policy in place at the time of the charge before the EEOC, the individual co-defendants had until June 16, 2001 or thirty days thereafter to notify its insurer. The notice plainly was not timely provided. Therefore, the arguments raised by the individual co-defendants as to providing notice of the complaint on June 17, 2002, to

ACE and arguing that this was the claim first made is inapposite to the plain language as to potential legal action known required to be notified to the insurance company. Furthermore, since the insured failed to timely answer the Second Request for Admissions submitted by ACE, it was undoubtedly admitted that ACE[1] was never noticed that plaintiff had filed an administrative charge within the EEOC against the co-defendants.

Notwithstanding, the Court notes that the individual co-defendants avers that the Magistrate Judge reliance on <u>Matos Molero v. Roche Products, Inc.</u> 132 D.P.R. 470 (1993) is misplaced because as understood by the co-defendants the Magistrate Judge reasoned that the charge filed within the EEOC "was sufficient analogous to a judicial claim or an extra-judicial claim for it to be 'first made' as to the filing of the charge". A thorough reading of the R & R does not move the undersigned to conclude as the co-defendants urge the Court because nowhere within the R & R does the Magistrate Judge states the conclusion reached by the co-defendants, nor provides, inference for such a conclusion. The R & R simply restates the known principle that in order for an administrative charge to become an effective extra-judicial claim it must assert the same substantive claims as those alleged in the complaint to the passive figure and in order to toll any statute of limitations the agency must provide the same remedies as the civil proceeding. *See*, <u>Leon Nogueras v. University of Puerto Rico</u>, 964 F.Supp. 585, 589 (D.P.R. 1997)[2]; <u>Cintron v. ELA</u>, 127 P.R. Dec. 582, 595 (1990).

Finally, the Court must note that the coverage provided under the instant policies was warranted under a "claims made" policy. The relevant differences between a "claims made" and

---

[1] Request for admissions not timely answered are deemed admitted by operation of Rule 36(a), Fed.R.Civ.P., 28 U.S.C.A. In its relevant part, Rule 36(a) provides that: "the matter is admitted unless within 30 days after the service of the request ... the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter..."

[2] (Analysis made by the district court under Puerto Rican law; <u>Diaz de Diana v. A.J.A.S. Ins. Co.</u>, P.R. Dec. 471, 476 (1980))(*citing* Civil Code commentator L. Diez Picaso, <u>La Prescripción en el Código Civil</u> (Prescription in the Civil Code).

"occurrence" policy is that the former covers the insured for claims made during the policy year and reported within that period or a specified period thereafter regardless of when the covered act or omission occurred rather, the latter covers acts or omissions occurring within the policy period, regardless of the date of discovery.  It is settled law that under a "claims made" policy, the insured must comply strictly with the notice requirement because it ensures fairness in rate setting while in the "occurrence" policy the purpose of the notice requirement is to permit an insurer to make an investigation of the facts relating to liability.  National Union Fire Insurance Co. v. Talcott, 931 F.2d 166, 168 n.4 (1st Cir. 1991).[3]

According to Puerto Rico substantive law, an insured is not relieved from liability unless a showing of material and substantial prejudice has been suffered.  Municipality of San Juan v. Great American Insurance Company, 813 F.2d 520, 521 (1st Cir. 1987).  In other words, the insured's failure to comply with the notice requirement must cause prejudice to the insurer in order to avoid liability.  Consequently, an insurer cannot allege prejudice if it had knowledge of the pending claim and was familiar with the case.  Id.

An examination of the insurance policies issued by ACE on behalf of the co-defendants show, as stated previously, coverage was to be provided for claims for any wrongful acts provided that the claim was first made against an insured during the policy period but not later that thirty (30) days after the termination of the policy.  Hence, the terms and conditions contractually entered into by the parties specifically addressed the period of time allowed to the insured to notify the claim. Accordingly, Puerto Rico substantive law states that a contract is the law amongst the contracting parties. Puerto Rico Civil Code, Art. 1044, P.R. Laws Ann., Tit.31, §2294.  Since an insurance agreement is a binding contract amongst the parties, the insurer/insured relationship is governed by

---

[3] Talcott, is a diversity jurisdiction case examining a claim made under a "claims made" policy in which the Massachusetts state law is examined to assert distinctions between "claims made" and "occurrence" policies. Massachusetts substantive law, as Puerto Rico substantive law provides that in order for an insurer to avoid liability the burden is on the insurer to make a showing of prejudice resulting from insured's late notice that a claim has been made against the insured.

Puerto Rico substantive law in absence of a forum choice of law.

In the instant case that the contracting parties, on one hand, agreed to provide coverage for any wrongful acts but at the same time coverage was to be provided should the claim be notified to the insurer within a specified period of time. Should the Court accept the individual co-defendants and plaintiff's joint proposition that coverage to the insured must be provided regardless of the insured's untimely notice unless prejudice is shown by the insurer would render the notice requirement clause useless since evidently in a "claims made" policy time is of the essence to determine future rates of the ongoing policy. This in turn, would be contrary to the terms and conditions agreed by the parties at the time the "claims made" policies were issued.

The undersigned recognizes that Puerto Rico's substantive law acknowledges the principle that an insured can deny coverage to its insured when prejudice resulting from defective notice is suffered by the former and the insurance carrier has the burden to evidence such prejudice. Municipality of San Juan v. Great American Insurance Company, 813 F.2d at 521. However, the undersigned acknowledges that since the parties wilfully at the time entered into a contract that is the law amongst said parties. Hence, the aforementioned principle cannot be applied generally to all types of insurance policies, in specific to "claims made" policies wherein the premium to be paid by the insurer is quoted on a basis of the notice requirement to ensure fairness in rate-setting; therein precisely lays the prejudice to the insurer. National Union Fire Insurance Co. v. Talcott, 931 F.2d at 168 n.4. To the contrary, "occurrence" policies allows that an insurer conduct an investigation of the facts giving raise to the claim hence a late notice to the insurer although in some manner may affect its ability to conduct said investigation however, does not bar the insurer to conduct a belated investigation hence prejudice to the insurer must be showed in order to waive its duty to provide coverage. Id. In the instant case, having previously determined that the EEOC charge was the notice of the claim first made to the instant co-defendants/insured and notice to the individual co-defendants was made on June 2002, that is, one and half years after the administrative charge was filed notifying the claim and having ruled that said notice was belated for purposes of coverage

under the instant policies, the Court concludes, as did the Magistrate Judge, that the insured's showing of prejudice is unnecessary.[4]

## CONCLUSIONS

The Court need not go further, for it refuses to write "at length to no other end than to hear its own words resonate." Lawton v. State Mut. Life Assur. Co. of Am., 101 F.3d at 220. "Where, as here, a [Magistrate] has produced a first-rate work product, a reviewing tribunal should hesitate to wax longiloquence simply to hear its own words resonate." In re San Juan Dupont Plaza Hotel Fire Litig., 989 F.2d at 38. For the reasons stated herein, the Court hereby **ADOPTS *in toto*** the Magistrate Judge's Report and Recommendation (Docket No. 93) and hereby **GRANTS** ACE's *Motion for Summary Judgment* (Docket No. 62) and **DISMISSES** all plaintiff's claims against ACE Insurance Company **WITH PREJUDICE**.[5]

**IT IS SO ORDERED.**
In San Juan, Puerto Rico this 10th day of August 2005.

S/DANIEL R. DOMINGUEZ
DANIEL R. DOMINGUEZ
U.S. DISTRICT JUDGE

---

[4] However, the Court notes that the co-defendants have failed to establish a distinction, as the Talcott court did, as to the applicability of the failure to provide notice to an insurer and the relationship as to the requirement of a showing of prejudice in order to avoid liability between "claims made" and "occurrence" policies.

[5] However, the Court will refrain from issuing a partial judgment at this time. The First Circuit strongly disfavors partial judgments as they foster piecemeal appeals. *See* Nichols v. Cadle Co., 101 F.3d 1448, 1449 (1st Cir. 1996) ("piecemeal appellate review invites mischief. Because the practice poses a host of potential problems we have warned, time and again, that Rule 54(b) should be used sparingly."); Zayas-Green v. Casaine, 906 F.2d 18, 21 (1st Cir. 1990) ("This final judgment rule . . . furthers 'the strong congressional policy against piecemeal review.'" Id. (quoting In re Continental Investment Corp., 637 F.2d 1, 3 (1st Cir. 1980)); Comite Pro Rescate De La Salud v. Puerto Rico Aqueduct and Sewer Authority, 888 F.2d 180, 183 (1st Cir. 1989); Consolidated Rail Corp v. Fore River Ry. Co., 861 F.2d 322, 325 (1st Cir. 1988); Spiegel v. Trustees of Tufts Coll., 843 F.2d 38, 43 (1st Cir. 1988); Santa Maria v. Owens-Ill., Inc., 808 F.2d 848, 854 (1st Cir. 1986)); *see also*, United States v. Nixon, 418 U.S. 683, 690 (1974).